**STATE of Iowa, Appellee,**

v.

**Dennis G. DOUGLAS, Appellant.**

**No. 03–0154.**

Supreme Court of Iowa.

Feb. 25, 2004.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Michael L. Wolf, County Attorney, and Gary P. Strausser, Assistant County Attorney, for appellee.

TERNUS, Justice.

It has long been the law in Iowa that one may not be convicted on the testimony of an accomplice alone. *See* Iowa R.Crim. P. 2.21(3); *State v. Brandt*, 242 Iowa 382, 388, 44 N.W.2d 690, 693 (1950). A similar rule exists with respect to a defendant's confession: "a confession standing alone will not warrant a criminal conviction unless other proof shows the defendant committed the crime." *State v. Polly*, 657 N.W.2d 462, 466 (Iowa 2003);

*accord* Iowa R.Crim. P. 2.21(4) (stating defendant's uncorroborated confession will not support a conviction "unless made in open court"). Thus, when the prosecution relies on either type of proof, corroborating evidence independently linking the defendant to the offense is required. *Polly*, 657 N.W.2d at 466 (defendant's confession); *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983) (accomplice testimony). It is this corroboration requirement that lies at the heart of the appeal before us.

The defendant, Dennis Douglas, was convicted of conspiracy to manufacture methamphetamine based primarily on the testimony of an accomplice, the testimony of an alleged accomplice, and the defendant's out-of-court confession. He contends on appeal the trial court improperly allowed the jury to determine whether one of the State's witnesses, Shelley Douglas, was an accomplice, rather than instructing the jury that she was an accomplice as a matter of law. In addition, Douglas argues the trial court erroneously instructed the jury that his confession could be used to corroborate the testimony of Jason Carpenter, an undisputed accomplice, and that Carpenter's testimony could be used to corroborate the defendant's confession.

The State disputes any trial court error. It also maintains that if the court erred in submitting the question of Shelley's accomplice status to the jury, such error did not result in prejudice. This latter argument rests on the State's position that we should abandon our long-standing rule that "one accomplice cannot be a witness to corroborate the testimony of another accomplice in the same crime." *Johnson v. State*, 4 Greene 65, 65 (Iowa 1853); *accord State v. Graham*, 291 N.W.2d 345, 349 (Iowa 1980). In the absence of this rule, claims the State, Shelley's status as an accomplice becomes irrelevant because she could corroborate Carpenter's testimony even if she were an accomplice.

We have carefully considered the matters raised by the defendant and find no error. Accordingly, we affirm his conviction and sentence for conspiracy to manufacture methamphetamine.

## I. *Background Facts and Proceedings.*

Douglas, Shelley (his estranged wife), Carpenter, and Nathan Franzen spent the evening of April 21, 2002, drinking and using methamphetamine at the home of Shaun Burridge. At some point, the group decided to go to Shelley's house to make more methamphetamine using some materials Burridge had available from a prior batch. Once at Shelley's house, they worked through the night and by morning had produced enough methamphetamine to divide among them.

Later in the morning of April 22, Carpenter and Franzen were stopped for speeding. The officer's search of their vehicle revealed drug paraphernalia and methamphetamine. Carpenter's subsequent confession led the authorities to Douglas, who also gave the police a full statement of his involvement in the manufacturing episode.

Douglas and Carpenter were charged with conspiracy to manufacture methamphetamine in violation of Iowa Code section 124.401(1)(*c*)(6) (2001). Carpenter pled guilty to this charge, but Douglas entered a not-guilty plea. Shelley pled guilty to a lesser offense: "gathering people to manufacture a controlled substance." Iowa Code § 124.407. Both Carpenter and Shelley agreed to testify in Douglas's case, which was subsequently tried to a jury.

At Douglas's trial, a police officer testified to the admissions made by the defendant concerning his active participation in

the manufacturing of methamphetamine on April 21–22. Carpenter and Shelley also testified. Carpenter's testimony confirmed Douglas's out-of-court statements that Douglas had joined in manufacturing methamphetamine at Shelley's house.

Carpenter's testimony was somewhat inconsistent, however, with respect to the extent of Shelley's involvement. Although he testified she did not participate in the decision to leave the Burridge residence and travel to her house to make methamphetamine, Carpenter said Shelley was going to be involved in the manufacturing process. He testified the group started the manufacturing operation in the kitchen of Shelley's home. Shelley sat at the kitchen table and watched until she went to her bedroom to change clothes. While she was gone, the men moved the operation to the basement. Carpenter testified Shelley came downstairs twice, for about five minutes each time. He said she was "really intoxicated" and acted confused. She sat on a bench and talked to Carpenter. She did not ask them to stop what they were doing, nor did she ask them to leave. Later, when they were finished, Shelley joined in smoking some of the product. Carpenter said she received a share in exchange for the use of her residence.

In Shelley's testimony, she acknowledged she was at Burridge's home on April 21. She said she drank heavily and subsequently blacked out. She awoke in the middle of the night and discovered she was in her own home. Shelley testified she recalls hearing people in the basement and smelling something. She went downstairs but was there only a few minutes because Douglas told her to go back upstairs. She did not know what the men were doing. Later she returned out of curiosity and then realized they were making drugs. She denied she gave anyone permission to use her home to manufacture methamphetamine. Shelley admitted she smoked some of the methamphetamine made that night, but denied receiving a share.

The defendant argued at trial that Shelley and Carpenter were accomplices as a matter of law. Although the trial court instructed the jury that Carpenter was an accomplice, it submitted the question of Shelley's status as an accomplice to the jury. The court told the jury that the defendant could not be convicted on accomplice testimony alone. Over the defendant's objection, however, the court instructed the jury that "[t]he corroboration of accomplice(s) may come from the defendant himself in the way of an admission, confession, or other evidence." Similarly, the court gave the jury an instruction that informed them Douglas could not "be convicted by a confession alone," but that corroboration "may come from an accomplice." The jury found the defendant guilty.

Douglas now appeals to this court, claiming the trial court erred in failing to instruct the jury that Shelley was an accomplice and in permitting the jury to use accomplice testimony and the defendant's confession to corroborate one another. While the defendant also claims the evidence was insufficient to support his conviction, this argument rests on his assertion that the only incriminating evidence came from the uncorroborated testimony of two accomplices and the defendant's uncorroborated confession. Douglas apparently concedes that if the trial court was right concerning the prevailing law on corroboration, the evidence is sufficient to sustain his conviction. Thus, this appeal turns on whether the trial court accurately applied the law governing corroboration of accomplice testimony and defendants' confessions. We review for correction of er-

rors of law. *See State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997).

## II. *Was Shelley an Accomplice as a Matter of Law?*

■ An accomplice is a person who " 'could be charged with and convicted of the specific offense for which an accused is on trial.' " *State v. Berney*, 378 N.W.2d 915, 917 (Iowa 1985) (citation omitted). Thus, proof that the person had knowledge that a crime was planned or proof that the person was present when the crime was committed is insufficient standing alone to make the person an accomplice. *Id.* It must be established by a preponderance of the evidence that the person was involved in some way in the commission of the crime. *Id.*

■ When the facts and circumstances are undisputed and permit only one inference, whether a witness is an accomplice is a question of law for the court. *State v. Harris*, 589 N.W.2d 239, 241 (Iowa 1999). If the facts are disputed, however, or give rise to different inferences, the question is for the jury. *Id.*

■ Here, the facts and circumstances are disputed and different inferences could be drawn from the evidence with respect to Shelley's involvement in the conspiracy to manufacture methamphetamine. One element of this crime is that the accused agreed with one or more persons that one or more of them would manufacture or attempt to manufacture methamphetamine. *State v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001). In addition, the accused must make this agreement "with the intent to promote or facilitate the manufacture of methamphetamine."

*Id.* Although the defendant argues the evidence established that Shelley was an accomplice, the testimony of Carpenter and Shelley would also support a finding that Shelley did not participate in the decision to manufacture methamphetamine and was so intoxicated that she was unaware of what her visitors were doing until the manufacturing process was well underway. *See Stanley v. United States*, 245 F.2d 427, 430 (6th Cir.1957) ("It is well established that one who has no knowledge of the object of a conspiracy cannot be a conspirator, for the intent to participate is lacking.").

In view of the contrary inferences that could be drawn from the evidence, it was for the jury to choose which inferences were warranted under the testimony given at trial. *Berney*, 378 N.W.2d at 917. Therefore, the court did not err in instructing the jury to decide whether Shelley was an accomplice. *See Harris*, 589 N.W.2d at 241–42 (holding court properly refused to instruct that witnesses were accomplices where the criminality of the witnesses could not be determined as a matter of law); *Berney*, 378 N.W.2d at 918 (same).

## III. *Can the Defendant's Confession and the Accomplice's Testimony Corroborate Each Other?*

■ As noted above, confessions or admissions by a defendant and accomplice testimony require corroboration.[1] This requirement arises, in part, from concerns about the trustworthiness of such evidence. Accomplice testimony is suspect by virtue of an accomplice's self-interest in focusing blame on another person.

---

1. Although there is a distinction between confessions and admissions, *see State v. Capper*, 539 N.W.2d 361, 364 (Iowa 1995), *overruled on other grounds by State v. Hawk*, 616 N.W.2d 527, 530 (Iowa 2000), a defendant's " 'admissions of essential facts or elements of the crime, subsequent to the crime,' " must be corroborated just like a defendant's confession, *Polly*, 657 N.W.2d at 466 n. 1 (citation omitted).

*Ware,* 338 N.W.2d at 710. The requirement of corroborating evidence for a defendant's confession is intended to reduce the incidence of convictions based on false confessions. *Polly,* 657 N.W.2d at 466. By encouraging the development of more reliable evidence through competent investigation and discouraging dependence on possibly coercive and untrue confessions, this requirement also promotes the use of more desirable investigatory techniques by police. *Id.*

With these purposes in mind, we consider the defendant's contention that two items of evidence, both legally insufficient to independently support a conviction, should not be adequate in combination to convict an accused. While this argument has superficial appeal, under closer examination, it is unpersuasive.

We first note that we have held in prior decisions that a defendant's out-of-court confessions and admissions may corroborate the testimony of an accomplice. *See State v. Bizzett,* 212 N.W.2d 466, 468 (Iowa 1973) (stating "the defendant himself may furnish the required corroboration of accomplice testimony"); *Brandt,* 242 Iowa at 388, 44 N.W.2d at 693 (holding defendant's "statement or confession" in which he admitted his presence at the crime scene was "sufficient corroboration of the testimony of accomplices"); *State v. Morrison,* 221 Iowa 3, 7, 265 N.W. 355, 357 (1936) (holding defendant's admissions to deputy sheriff provided satisfactory corroboration of accomplice); *accord State v. Jones,* 511 N.W.2d 400, 405 (Iowa Ct.App.1993) ("A defendant's admissions may be considered corroboration."). Although we did not explain our rationale for allowing cross corroboration in these cases, we think our decisions withstand the present scrutiny.

The potential weakness in accomplice testimony is that an accomplice might lie to divert attention from or minimize his own culpability. Common sense suggests that this tendency is only exacerbated if multiple accomplices point the finger at the same defendant, because one accomplice may be emboldened to accuse the defendant, knowing another accomplice has already done so. Thus, it is not particularly reassuring that two accomplices testify to the defendant's commission of an offense. Hence, the rule that the testimony of one accomplice may not corroborate the testimony of another accomplice has developed.[2]

Confessions by defendants do not suffer from the same concern. A false confession by the defendant might result, for example, from coercion, a desire to protect another, or mental illness. But unlike accomplices who might be motivated to give a common fabricated account of the crime, implicating the defendant for their mutual benefit, a defendant and an accomplice would not share a unified goal of blaming the defendant. Therefore, we do not perceive a similar danger of wrongful conviction when an accomplice's testimony is corroborated by the defendant's confession as compared to the risk of an erroneous conviction when two accomplices corroborate each other. For this reason, we reaffirm the legal principles applied in our prior cases and hold that the testimony of an accomplice and the confession of a defendant constitute acceptable corroboration, one for the other.

## IV. *Summary.*

We conclude the trial court properly determined there was a factual issue as to

---

**2.** For the reasons discussed, we decline the State's request to overrule our prior decisions holding that one accomplice may not corroborate the testimony of another accomplice. The concerns identified here call for continued adherence to this prohibition.

whether Shelley Douglas was an accomplice. Therefore, the court did not err in submitting this issue to the jury. In addition, the court properly instructed the jury that although the testimony of an accomplice could not corroborate the testimony of another accomplice, accomplice testimony could corroborate the defendant's confession and, similarly, the defendant's confession could serve as corroboration of the accomplice's account of the crime. Finding no merit in the issues raised by Douglas on appeal, we affirm his conviction.

**AFFIRMED.**