**IN THE COURT OF APPEALS OF IOWA**

No. 15-1789
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHANNON KNICKERBOCKER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Clayton County, Margaret L. Lingreen, Judge.

A defendant challenges his convictions for third-degree burglary and first-degree theft. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Ida Heins, her daughter, and her twin granddaughters often spent Saturday nights playing bingo in Harpers Ferry. When they returned to their Luana trailer after 10 p.m. on August 27, 2011, they discovered someone had broken in and taken their savings. Shannon Knickerbocker knew about the family's Saturday night bingo tradition. He also knew Heins had recently borrowed money to finance a land purchase. But authorities did not charge Knickerbocker until years later when his aunt, Shawna Knickerbocker,[1] came forward with information tying him to the crimes. In 2015, a jury convicted Knickerbocker of burglary and theft, finding he stole more than $10,000 from the Heinses.

Knickerbocker appeals the district court's denial of his motion challenging the jury verdicts as contrary to the weight of the evidence and the court's ruling Shawna was not an accomplice to the theft as a matter of law. Because Knickerbocker fails to show the district court abused its discretion in denying his motion for new trial, we decline to disturb the verdicts. As for the accomplice issue, the district court correctly left the matter up to the jury, and regardless of whether Shawna could have been convicted of theft, sufficient evidence corroborates her testimony implicating her nephew. Accordingly, we affirm.

## I.    Facts and Prior Proceedings

Motivated to keep the family farm intact but unable to obtain a bank loan to purchase twenty acres of an eighty-acre parcel, sixty-five-year-old Ida Heins

---

[1] Because she shares a last name with defendant Knickerbocker, we will refer to Shawna by her first name in this opinion.

borrowed $25,000 from her daughter-in-law in the spring of 2011 and another $18,000 from her best friend later that summer. Both loans came in the form of cash without written documentation. Heins kept the cash in two small lockboxes in her bedroom until she was able to finalize the land deal with her half-sister, Helen Upton. Upton and Heins had a strained relationship, and Heins believed Upton was making it difficult for her to buy the land.

Upton's daughter, Tiffany, was dating Knickerbocker in August 2011. During that summer, Knickerbocker welcomed several people to live at his house, including his aunt, Shawna; her boyfriend, John Bollman; and a teenager, Cody McCarthy. Those three associates of Knickerbocker all testified against him at the 2015 trial.

Shawna told the jury that on August 27, 2011, her nephew was gone for about one hour in the morning, returned home, and "told John and Cody to put their shoes on." She also testified Knickerbocker supplied her with hydrocodone pills, which affected her memory. Later that day, she received a text message from Knickerbocker saying they were lying in a cornfield and predicting she would "be happy when they returned." According to Shawna, her nephew returned about four hours later carrying a duffel bag and gave her $1000, telling her not to spend it on big things and "to shut [her] mouth about the burglary." Shawna did not share this information with law enforcement until August 2013, attributing her delay to "fear, being disloyal."

Seventeen-year-old McCarthy testified he went along with Knickerbocker's plan to get money from the Heins trailer. According to McCarthy, on August 27, 2011, Bollman drove toward the trailer in a white Dodge Intrepid; McCarthy and

Knickerbocker were passengers. They parked at a graveyard and waited until the Heins family left for bingo. McCarthy testified: "After we had seen them leave, we had gone into the cornfield next to the house and went around to the backside." Knickerbocker pried the door open with a screwdriver, according to the teenager's testimony. Once inside, Knickerbocker told McCarthy to search for money. McCarthy grabbed "two five-dollar bills attached to a couple teddy bears." Meanwhile, Knickerbocker was in the back bedroom going through two lockboxes he pried open with the same screwdriver he used to gain entry. According to McCarthy, Knickerbocker dumped the contents of the lockboxes into a duffel bag before they left the trailer. Bollman drove them back to Knickerbocker's house. Knickerbocker gave McCarthy $500 of the stolen cash. McCarthy did not talk to law enforcement until 2013.

Bollman offered a similar recollection of August 27, 2011. Bollman testified Knickerbocker left his house in the morning and returned to say "he wanted to go for a ride." As Bollman drove the Dodge Intrepid, Knickerbocker revealed his plan to "get some cash" from the Heins trailer. Bollman recalled driving "past there a few different times" that afternoon. Bollman eventually stopped and let Knickerbocker and McCarthy out in the cornfield at Knickerbocker's direction. More than one hour later, Knickerbocker called Bollman to pick them up. Knickerbocker was carrying a duffel bag and pulled out a wad of cash to show Bollman. Bollman testified he later helped Knickbocker count the cash and received $5000 when they were done counting. Like McCarthy, Bollman did not provide information to the authorities until Shawna, his girlfriend, came forward in 2013.

When Ida Heins—along with her daughter and granddaughters—arrived home from bingo at 10:30 p.m. on August 27, 2011, she noticed "everything was topsy turvy" in her bedroom. The lockboxes were "busted open" and the borrowed cash was gone. Ida's daughter, Patricia, noticed piggy banks and teddy bears belonging to her eight-year-old daughters were missing, as well as $6000 of her own savings. Ida Heins called the Clayton County Sheriff's Office. The responding deputies discovered the back door had been pried open. Heins identified Knickerbocker as a possible suspect. Heins told the deputy she had seen Knickerbocker driving a blue truck past her house earlier that day. She also recalled seeing a white car drive by before they left for bingo; she described the driver as looking like Bollman.

Two other family members, Gina and Dalana Heins, testified to seeing Knickerbocker drive past the property on August 27, 2011, when they were outside doing yard work. Dalana recalled seeing Knickerbocker drive by in a blue truck, and Gina later saw a white car go past carrying three people, one of whom she believed to be Knickerbocker.

Deputy Brent Ostrander interviewed Knickerbocker about the break-in. At Knickerbocker's house, the deputy saw a blue Dodge pickup truck. During the 2011 interview, Knickerbocker discussed the land deal between Upton and Heins, revealing he had read the contract drawn up by an attorney to facilitate the sale. Knickerbocker denied any involvement in the burglary and told the deputy his housemates—Shawna, Bollman, and McCarthy—could vouch for his whereabouts. But the deputy did not talk with Knickerbocker's housemates at that time.

The case remained unsolved until August 2013, when Deputy Ostrander interviewed Shawna, Bollman, and McCarthy. Following those interviews, the State charged Knickerbocker with first-degree theft for unlawfully taking possession of another's property with a value exceeding $10,000, in violation of Iowa Code sections 714.1 and 714.2(1) (2011), and third-degree burglary for unlawfully entering an occupied structure having no right, license or privilege to do so with the intent to commit a theft therein, in violation of sections 713.1 and 713.6A(1). The State did not charge Shawna, Bollman, or McCarthy with any crimes.

Knickerbocker's trial took place in July 2015. At the close of the evidence, defense counsel asked the court to rule Shawna, Bollman, or McCarthy were accomplices as a matter of law. The court agreed McCarthy was an accomplice as a matter of law but allowed the jurors to consider whether they believed Shawna and Bollman were accomplices, as defined in the jury instructions, whose testimony required corroboration. The jury answered an interrogatory finding Bollman fit the definition of an accomplice but Shawna did not. The jury returned guilty verdicts on both counts and also answered an interrogatory finding the value of the property taken by Knickerbocker exceeded $10,000.

Knickerbocker sought a new trial, alleging the verdict was against the weight of the evidence. The district court denied Knickerbocker's new-trial motion and imposed indeterminate sentences of ten years on the theft count and five years on the burglary count. The court ran the terms concurrently, suspended the prison time, and ordered Knickerbocker to serve two to five years of probation. Knickerbocker now appeals, renewing his weight-of-the-evidence

challenge and contesting the court's refusal to find Shawna was an accomplice as a matter of law.

## II.     Scope and Standards of Review

When reviewing the district court's denial of Knickerbocker's motion for new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(6), we look only to see if the court abused its wide discretion.  *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).  "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 203 (clarifying appellate court does not sit to judge witness credibility or reweigh evidence).

We review Knickerbocker's accomplice claim for the correction of errors at law.  *See State v. Douglas*, 675 N.W.2d 567, 570–71 (Iowa 2004).

## III.     Analysis

### A. Did the district court abuse its discretion in denying the motion for new trial?

In his motion for new trial, Knickerbocker alleged the greater amount of credible evidence supported his position that he did not participate in the burglary and theft.  He complained of "uncorroborated accomplice testimony" and the lack of physical evidence linking him to the crimes.  He also challenged the State's proof that the value of the stolen property exceeded $10,000.

Before overruling Knickerbocker's motion, the district court offered the following evaluation of the evidence:

> At trial, John Bollman and Cody McCarthy, accomplices, testified as to [Knickerbocker's] involvement in the crimes at the

victim's residence. Corroboration of the accomplices' testimony was provided by Shawna Knickerbocker, Gina Heins, Ida Heins, and Delana Heins. The jury determined Shawna Knickerbocker was not an accomplice. The testimony of Gina Heins, Ida Heins, and Delana Heins placed [Knickerbocker] and accomplice near the location of the Heins residence earlier in the day the crime was committed.

Ida Heins testified as to the items, including money, taken from her residence. Two individuals who had advanced monies to Ida Heins confirmed Ida Heins's receipt of the monies.

The district court recognized its ability to set aside the jury's verdicts if they were "contrary to the weight of the evidence and a miscarriage of justice may have resulted." *See Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005). But the court decided the evidence at Knickerbocker's trial did not "preponderate heavily against the jury's verdict."

On appeal, Knickerbocker contends the State's witnesses who implicated him were not credible. He asserts the inconsistencies in their testimony and their motivations for accusing him "shed a great deal of doubt on their testimony."

The foibles of the State's witnesses were on full display for the jury. Defense counsel cross-examined Shawna, Bollman, and McCarthy regarding the leniency they received for their testimony. The jury learned of Shawna's drug addiction and her prior false testimony. These witnesses had information about the crimes because—to various degrees—they interacted with Knickerbocker before, during, or after the burglary, and all received some of the ill-gotten gains. As the prosecutor told the jurors during closing argument: "If you're going to cast a play in hell, don't expect the actors to be angels." Under no delusion the State's witnesses were angels, the jury nevertheless believed their testimony connecting Knickerbocker to the burglary and theft.

Because it is the function of the jury to believe or disbelieve witnesses, the power to grant a new trial is reserved for those "exceptional cases" where the credible evidence tips the scales dramatically away from a guilty verdict. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) (citation omitted). The district court did not see this as an exceptional case. It found sufficient corroboration of the accomplices in the testimony of Ida Heins, as well as Gina and Delana Heins. The district court did "exactly what it was required to do under a weight-of-the-evidence standard." *See Reeves*, 670 N.W.2d at 209. It carefully weighed the evidence, determined credibility, and gave sufficient reasons for its decision. It is not our job to reassess witness credibility or reweigh the evidence. The district court acted well within its discretion in denying the motion for new trial.

**B.  Was Shawna Knickerbocker an accomplice as a matter of law?**

The State cannot convict a defendant based solely on accomplice testimony. Iowa R. Crim. P. 2.21(3). When relying on accomplice testimony, the State must offer corroborating evidence that independently links the defendant to the crime. *Douglas*, 675 N.W.2d at 568–69. Corroboration need not be strong nor go to the whole case. *State v. Liggins*, 524 N.W.2d 181, 187 (Iowa 1994). The testimony of one accomplice may not be used to corroborate the testimony of another accomplice. *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010).

Our case law defines an accomplice as someone who "could be charged with and convicted of the specific offense for which an accused is on trial." *Douglas*, 675 N.W.2d at 571 (citation omitted). Standing alone, proof that a person knew the accused was planning the crime or was present when the accused committed the crime is not enough to brand the person as an

accomplice. *Id.* The defense must show by a preponderance of the evidence the person was somehow involved in the commission of the crime. *Id.* "When the facts and circumstances are undisputed and permit only one inference, whether a witness is an accomplice is a question of law for the court." *Id.* But if the facts are disputed or give rise to different inferences, the accomplice question is for the jury. *Id.*

At trial, defense counsel argued all three of Knickerbocker's housemates—Shawna, Bollman, and McCarthy—were accomplices as a matter of law. Counsel asserted Shawna "could be charged under a theory of aiding and abetting, that she was aware of this supposed plan, that she had received text messages during the supposed incident and that she supposedly received money." The court instructed the jury McCarthy was an accomplice but found the status of Shawna and of Bollman gave rise to different factual inferences and, therefore, posed questions for the jury. The jury decided Bollman was an accomplice but Shawna was not.

On appeal, Knickerbocker argues the district court erred in not instructing the jury Shawna was an accomplice to the theft.[2] He points out Shawna admitted on the witness stand she accepted $1000 from him knowing it was stolen and did not return the cash to the Heinses or turn it over to authorities.

The State contends Knickerbocker's argument is foreclosed by *State v. Houston*, 211 N.W.2d 598, 601 (Iowa 1973), where the supreme court held a witness who later received stolen property from a defendant being prosecuted for receiving stolen property was not an accomplice because the later receipt was

---

[2] Knickerbocker does not argue Shawna was an accomplice to the burglary.

not the same offense for which defendant was on trial. We agree the logic of *Houston* undermines Knickerbocker's position. While the State may have been able to prosecute Shawna for possession of stolen property she received from her nephew, that offense was different and separate from Knickerbocker's act of taking the money from the Heinses. The district court correctly determined Shawna was not an accomplice as a matter of law.

But even if Shawna had been an accomplice to Knickerbocker's theft from the Heinses, the State presented sufficient evidence to corroborate her version of events and to support the jury's guilty verdict. Shawna testified to Knickerbocker leaving the house twice on August 27, 2011, first on his own and later with Bollman and McCarthy. The testimony of Ida Heins, as well as that of Gina and Dalana Heins, about the unusual traffic they saw on their rural Luana road that day provided a vital link between Knickerbocker and his confederates and the theft discovered at the trailer later that night. Knickerbocker cannot show he was prejudiced by the district court's determination that Shawna was not an accomplice to the theft as a matter of law.

**AFFIRMED.**