# IN THE COURT OF APPEALS OF IOWA

No. 17-0753
Filed March 20, 2019

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DEVARIS MARQUIS PERRY,**
     Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Bradley M. McCall,

Judge.

        The defendant appeals from his convictions for attempted murder,

intimidation with a dangerous weapon with intent, and reckless use of a firearm

resulting in property damage.  **AFFIRMED.**

        Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

        Devaris Perry, Anamosa, pro se.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.

        Considered by Potterfield, P.J., Doyle, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**POTTERFIELD, Presiding Judge.**

Devaris Perry appeals from his convictions for attempted murder, intimidation with a dangerous weapon with intent, and reckless use of a firearm resulting in property damage. With the assistance of counsel, Perry argues the district court abused its discretion in failing to exclude a State witness for whom there was inadequate notice, there was insufficient evidence to support his conviction for attempted murder, the weight of the evidence is contrary to each of the three guilty verdicts, and trial counsel provided ineffective assistance by failing to file a motion to suppress Perry's involuntary confession. Additionally, in a supplemental pro se brief, Perry reiterates some of the arguments made by counsel and also maintains there was no corroboration of accomplice testimony and his trial counsel was ineffective when he inadequately impeached a witness for the State.[1]

**I. Background Facts and Proceedings.**

On October 31, 2016, Des Moines Police received several reports of a blue car chasing a Dodge Charger and of the passenger of the blue car firing multiple gunshots at the Charger. The Charger, which was driven by Tyrone Cameron, was hit with three bullets. Another vehicle in the area was also hit with bullets.

---

[1] Perry also raises other issues—some by random mention without further analysis and others that were not raised before the district court and do not fall within exceptions to the typical rules of error preservation. These are the only two issues raised by Perry pro se that do not violate our rules of error preservation and were briefed with sufficient analysis for our review. *See In re Estate of DeTar*, 572 N.W.2d 178, 181 (Iowa Ct. App. 1997) (providing we must judge briefs by pro se litigants at the same standard we judge those by Iowa attorneys and we may only consider the pro se litigant's claims "to the extent we believe we can do so without assuming a partisan role and undertaking [their] research and advocacy").

The State later alleged Perry was the shooter, charging him with attempted murder, intimidation with a dangerous weapon with intent, and reckless use of a firearm resulting in property damage.

At his jury trial, Jacqueline Cameron—the mother of two of Perry's children—testified that she married Tyrone Cameron one day before the shooting. Perry had expressed to her before October 31 that he was unhappy another man would be helping to raise his children. Jacqueline testified on that on the morning of October 31, she witnessed her husband "screech" away from the curb near their home in his Dodge Charger while Kyara Stogner's blue car chased him. Jacqueline stated there were two people in Stogner's car, with Perry in the passenger seat, and they were both wearing white t-shirts. She maintained she witnessed Perry lean out of open passenger door and fire gunshots at her husband's car, although when asked, she admitted she had not initially identified Perry as the shooter. Immediately after the incident, Jacqueline and Tyrone drove the Charger to the police station and allowed officers access to the vehicle. Tyrone told officers Perry was the passenger in the blue vehicle and had shot at him.

At about the same time, Perry called 911 and reported that he was being shot at.

A neighbor's surveillance camera recorded some of the chase, and the police were provided a copy. The video was admitted at trial and published to the jury. It shows a Charger driving quickly in what appears to be an attempt to flee from the blue car that is behind it, and a man matching Perry's description wearing a white shirt and white hat, leaning out of the open passenger door of

the blue car. A number of gunshots can be heard both before and after the Charger and blue car are visible in the frame.

Stogner testified that on the morning of October 31, she was driving her blue car with Perry as her passenger; Perry was wearing a white t-shirt and white hat. She stated Perry asked her to drive to Jacqueline's house, so she did so. She testified that when they were near Jacqueline's home, Perry told her to "get on their ass"—which she took to mean to follow the car ahead of them. At the time he said it, Perry had pulled out a gun and was holding it. She testified she did as he said because she was "scared," "terrified," and "didn't know what to think." As she drove behind the Charger, Perry shot the gun at the Charger "about eight times." At some point, the Charger turned a corner, and Stogner stopped following the vehicle. Then Perry called the police and reported that someone was shooting at him.

Sometime later in the day on October 31, Detective Brad Youngblut called Perry. During the call, which was recorded and ultimately played for the jury, the detective expressed the need to meet with Perry, explaining that he had questions about Perry's involvement in the shooting because he had received reports Perry was involved and also because Perry had called 911 and claimed he was being shot at. The detective offered to meet Perry somewhere in the community and bring him to the station. At some point during the call, the detective expressed that if Perry did not choose to meet with him, the detective would tell his rookie patrol officers that Perry was armed and dangerous and needed to be brought in. The detective referenced an incident in Chicago, during

which Perry was shot by police officers, but also told Perry that Des Moines police do things differently than Chicago police.

The next day, Perry met with the detective at the police station. Perry received a *Miranda* warning and agreed to talk to the officer. Less than a half hour into their meeting, Perry admitted to the detective that he and Stogner were in the blue car and that he had shot at Tyrone. At one point, he claimed Tyrone had also shot at him. Later testing by the department of criminal investigations determined that all nine of the recovered shell casings were fired from the same gun.

Perry testified in his own defense at trial. He retracted his confession to the detective, claiming he told the officer what he wanted to hear. He testified he was near the scene of the chase at the time but was driving a black jeep with his daughter inside. He stated he heard seven or eight gunshots, from two different caliber weapons, and assumed he was the target of the shooting.

The jury convicted Perry as charged. He was later sentenced to a term of incarceration not to exceed twenty-seven years.

Perry appeals.

## II. Discussion.

### A. Untimely Notice of Witness.

Perry notes, and the State concedes, that the State failed to provide notice of Stogner as a witness until nine days before trial. Perry argues the district court should have excluded her testimony as a result.

Iowa Rule of Criminal Procedure 2.19(3) provides:

> If the prosecuting attorney does not give notice to the defendant of all prosecution witnesses (except rebuttal witnesses) at least ten days before trial, the court may order the state to permit the discovery of such witnesses, grant a continuance, or enter such other order as it deems just under the circumstances. It may, if it finds that no less severe remedy is adequate to protect the defendant from undue prejudice, order the exclusion of the testimony of any such witnesses.

The rule provides remedies the district court *may* utilize, including the exclusion of the testimony of the late noticed witness. We review the district court's decision not to exclude Stogner's testimony for an abuse of discretion. *See, e.g.*, *State v. LeGrand*, 501 N.W.2d 59, 62 (Iowa Ct. App. 1993) ("The question is whether the trial court abused its discretion in allowing defense attorneys to interview the additional witnesses, but not excluding the witnesses or continuing the case.").

The record is devoid of explanation why the State failed to notify Perry Stogner would be called as a witness until nine days before trial. The State filed its initial witness list in mid-December 2016—more than two and a half months before the State filed the notice of additional witnesses that included Stogner. However, we cannot find the district court abused its discretion in allowing Stogner to testify at Perry's trial. The court ordered the State to make Stogner available to be deposed before the trial began, and the State did so; Perry was able to fully depose her a couple days before the trial began. *See id.* (noting the trial court did not abuse its discretion when it allowed the late-noticed witnesses to testify after the court "provided the defendant's counsel the opportunity to interview the witnesses"). Because Perry was able to depose the witness, declined a continuance when offered one by the district court, and has not

otherwise explained how one fewer day of notice prejudiced him, the trial court did not abuse its discretion in allowing Stogner to testify. *See State v. Henderson*, No. 15-2227, 2017 WL 1735621, at *4 (Iowa Ct. App. May 3, 2017) (finding no abuse of discretion when the defendant "has not argued that he was surprised by any testimony of [the witness] or otherwise hampered in his defense").

### B. Sufficiency of the Evidence.

Perry challenges the sufficiency of the evidence to support his conviction for attempted murder. Perry challenges both whether there is substantial evidence he was the shooter and whether he had the specific intent to kill Tyrone Cameron.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In reviewing these challenges, "courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Id.* (alteration in original) (citation omitted). While challenges to the weight of the evidence are broader and require credibility determinations, the same is not true for challenges to the sufficiency of the evidence. *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008).

We have little trouble finding sufficient evidence to support a determination Perry was the shooter. Stogner testified she was driving her vehicle with Perry as a passenger when Perry told her to chase Tyrone and opened fire on Tyrone's

vehicle—shooting about eight times. Jacqueline Cameron testified she saw Perry leaning out of Stogner's vehicle firing a weapon at her husband's car. Additionally, though Perry later retracted his statements and testified differently at trial, in a video that was published to the jury, Perry admitted to the police that he chased Tyrone and shot at him.

Next, we consider whether there was substantial evidence to support a finding Perry specifically intended to kill Tyrone. He maintains the evidence that he haphazardly shot from one moving vehicle toward another is not sufficient to establish specific intent to murder. We disagree. Here, the evidence introduced at trial established that all nine shell casings recovered from the area of the car chase and shootings were shot from a single gun—the gun Perry was shooting. Although Tyrone was not hit by any of the bullets, three did enter the passenger compartment of his car. Perry told Stogner to follow Tyrone's vehicle and then began shooting at it—even leaning out of the open passenger door of the moving vehicle, presumably in order to get better shots at Tyrone's vehicle. According to Stogner's testimony, Perry wanted her to continue following Tyrone even after he fired the nine shots, but she refused. Moreover, there was testimony Perry was angry because Tyrone, who had married the mother of two of Perry's children the previous day, was going to be a father figure to Perry's children. According to Perry's own statements, he was on the phone with the Iowa Department of Human Services immediately before the shooting making a report in order to try to keep his children away from Tyrone.

Based upon Perry's animus toward Tyrone and his repeated discharge of a weapon at Tyrone's vehicle that only ended when Tyrone was able to get away

from Perry, there is sufficient evidence for a rational juror to conclude Perry intended to kill Tyrone. *See State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) (recognizing a rational juror could infer "that one who uses a dangerous weapon intends to cause physical harm, and even to kill").

Similarly, in his pro se brief, Perry maintains that Stogner's testimony required, but did not have, corroboration as she was as an accomplice to the crimes. *See* Iowa R. Crim. P. 2.21(3) ("A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense . . . ."). "An inherent supposition in the defendant's claim is that without the accomplice's testimony, the remaining evidence is insufficient to generate a fact question on the defendant's participation in the crime." *State v. Hutchinson*, 341 N.W.2d 33, 37 (Iowa 1983).

Here, we note the district court concluded Stogner was not an accomplice and refused—over Perry's objection—to give a jury instruction about accomplice testimony. But assuming without deciding that Stogner was an accomplice, Stogner's testimony was corroborated by Perry's out-of-court confession to the detective. *See State v. Douglas*, 675 N.W.2d 567, 572 (Iowa 2004) ("We first note that we have held in prior decisions that a defendant's out-of-court confessions and admissions may corroborate the testimony of an accomplice. . . . [W]e think our decisions withstand the present scrutiny."). "[T]he testimony of an accomplice and the confession of a defendant constitute acceptable corroboration, one for the other." *Id.*

**C. Weight of the Evidence.**

Perry challenges the weight of the evidence for each of his three convictions. He maintains the greater amount of credible evidence does not support finding he was the shooter. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) ("The 'weight of the evidence' refers to a 'determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." (alteration in original) (citation omitted)).

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). We are "limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203.

Perry maintains that Jacqueline's testimony was not credible because she had motivation to identify Perry as the shooter in order to "remove Perry from the family equation" and because her testimony identifying Perry was at odds with her testimony during deposition, when she testified she did not know who fired the gun. Even if we agree with Perry's characterization of Jacqueline's testimony, we cannot agree that the greater weight of credible evidence supports a finding someone else was the shooter. While Perry testified at trial that he was not the shooter, his testimony was directly contradicted by the admissions he made to the police in a video that was played for the jury. Additionally, Perry does not challenge the credibility of Stogner, who testified she was driving the vehicle during the time Perry was in the passenger seat shooting out of the vehicle at Tyrone. From the record before us, it is not clear what motivation

Stogner would have to lie about Perry's involvement, and Perry offers no suggestions.

The district court did not abuse its discretion in denying Perry's motion for new trial.

**D. Ineffective Assistance.**

Perry maintains his trial counsel provided ineffective assistance.

First, Perry maintains his confession to police was involuntary because one day earlier, before he traveled to the police department to meet with the detective and received a *Miranda* warning, the detective told Perry he needed him to share his version of the events that transpired because he had received information Perry was the shooter. The detective informed Perry that if Perry did not choose to meet with the detective, the detective would tell the young, rookie patrol cops that Perry was armed and dangerous and needed to be brought it. Perry claims he only went to the police station and told the officer he was the shooter because of the officer's statement, which implied that Perry may otherwise be harmed.

Second, Perry maintains trial counsel did not adequately impeach Jacqueline with her deposition testimony, during which he maintains she stated she could not identify the shooter. We do not have Jacqueline's deposition in the record before us.

"Ordinarily, we do not decide ineffective-assistance-of-counsel claims on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). "We prefer to [p]reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *Id.* We depart from the preference only

in cases where the record is adequate to evaluate the claims. *Id.* "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *Id.* Here, we believe the most prudent action is to preserve Perry's claims for possible postconviction relief. *See* Iowa Code § 814.7(3).

## III. Conclusion.

Substantial evidence supports Perry's convictions—even if Stogner was an accomplice. Additionally, we cannot say the district court abused its discretion when it denied Perry's motion to exclude Stogner as a witness or when it denied Perry's motion for new trial based on the weight of the evidence. Thus, we affirm Perry's convictions. We preserve for possible postconviction relief his claims of ineffective assistance.

**AFFIRMED.**