# IN THE COURT OF APPEALS OF IOWA

No. 16-1608
Filed November 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TYLER Q. CHANDLER,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.


        A defendant appeals his conviction, challenging the sufficiency of the evidence and the sentence imposed.  **AFFIRMED.**


        Jacob L. Mason of JL Mason Law, PLLC, Ankeny, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Tyler Chandler appeals his conviction for first-degree robbery, in violation of Iowa Code sections 711.1 and 711.2 (2014). He asserts there was insufficient evidence of his identity and the court abused its discretion in ordering his sentence to be served consecutively to a term of incarceration he was serving in Indiana.

**I. Background Facts and Proceedings.**

Chandler traveled to Iowa from Indiana in April 2014 with two friends, Charles Jenkins and Andrew Hodges. The three made the trip to Iowa with Waterloo residents, Jesse Mathews and his girlfriend, Monika Bray. Chandler, Jenkins, and Hodges stayed with Mathews and Bray in their Waterloo apartment, and every member of the group was unemployed at the time.

On the evening of April 23, 2014, Bray saw the four men—Chandler, Jenkins, Hodges, and Mathews—leave the house together. She testified the men had two firearms and they always left the residence with the guns on their person. That night, the group did not return to her home but instead left town to travel back to Indiana with no notice to Bray. However, Bray saw on social media that a robbery had taken place at the local Burger King the night of April 23. Bray next saw Mathews three or four days later when he threw money at her.

The employees of the Burger King testified that on the night of the robbery, a man entered the restaurant shortly before closing time and ordered a meal. The employees proceeded to conduct the regular closing duties and noticed the customer leave the lobby with a to-go bag for his food. Fifteen or

twenty minutes after the customer left, three armed men entered the restaurant, assaulted the employees, and demanded money. After they obtained cash drawers from the office, the three men left out the back door of the restaurant, dropping change as they went. The employees called the police.

While the employees were waiting for the police to arrive, they noticed the to-go bag of food that had been served to the customer earlier had been crumpled up and was holding the emergency, drive-thru door open. Surveillance video confirmed that the three assailants entered through the same drive-thru door. The to-go bag was given to police, who tested the leftover food inside the bag for DNA. The testing confirmed the person who ate the food was Jenkins.

During the course of the investigation, the police obtained a search warrant for the cell phone records of Chandler and Hodges. The text messages near the time of the robbery indicate the person using Chandler's cell phone was inside the restaurant communicating to the person using Hodges's cell phone descriptions of the employees and providing confirmation as to when would be a good time to enter the restaurant and which door to use.

Police traveled to Indiana to interview Chandler. He initially denied being in Iowa at the time of the robbery and also denied loaning his cell phone to anyone. After Chandler was confronted with the evidence that his cell phone was used the night of the robbery in Waterloo, he asked, "Can we start over?" Chandler then went on to explain he was in Waterloo in April for a week or two looking for a job, but when the job did not work out, he went back to Indiana.

Chandler was charged with first-degree robbery, along with Mathews and Jenkins, and the case against Chandler proceeded to a jury trial in July 2016.

The jury found Chandler guilty as charged. Chandler was sentenced to twenty-five years in prison with a mandatory minimum term of seventeen-and-one-half years. The court ordered the sentence to be served consecutively to any other existing sentence Chandler was serving.

On appeal, Chandler asserts the evidence of his identity as a person involved in the robbery is insufficient and the court abused its discretion in imposing a consecutive sentence.

## II. Scope and Standard of Review.

A challenge to the sufficiency of the evidence is reviewed for the correction of errors at law. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017).

> We consider the evidence in the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." We will, however, consider all evidence in the record, including evidence that does not support the verdict. Evidence raising only "suspicion, speculation, or conjecture is not substantial."

*Id.* (citations omitted).

A challenge to a sentence that is within the statutory framework is reviewed for an abuse of discretion. *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015).

## III. Sufficiency of the Evidence.

In challenging the sufficiency of the evidence supporting the conclusion he was part of the robbery, Chandler notes there was no evidence of his fingerprints or DNA at the scene, no video evidence confirming his identity, and no witness testimony identifying him as a participant in the robbery. He asserts there is nothing but "suspicion, conjecture or speculation" that he participated, or aided

and abetted others, in the commission of the robbery and, thus, his conviction must be reversed. The State asserts Chandler's association with Jenkins, Hodges, and Mathews both before and after the robbery, along with the use of Chandler's cell phone in furtherance of the robbery. provides sufficient circumstantial evidence of Chandler's participation as a principal or aider and abettor. We agree.

Mathews traveled to Indiana and picked up Chandler, Jenkins, and Hodges, transporting them to Waterloo where they lived together in the days and weeks before the robbery. The group of men were seen in possession of two firearms while in Waterloo, were known to never leave the firearms behind when they would leave the apartment, and were seen leaving the apartment together in the hours before the robbery.

Jenkins ordered and partially consumed a meal immediately before the restaurant closed for the evening. While in the lobby of the restaurant, Jenkins used Chandler's cell phone to relay information regarding the description of the three employees on the premises via text message to Hodges's cell phone. The individuals using Hodges's cell phone asked when was a good time to enter the restaurant, and Jenkins told them to enter through the emergency, drive-thru door where Jenkins had used the to-go bag of food to prop open the normally locked door.

When questioned about the robbery, Chandler told police he had not lent his cell phone to anyone. The three intruders wore masks and gloves, but the restaurant employees' descriptions of the firearms used by the assailants matched the description of the firearms Bray had seen all four men handle during

their stay in her home. All four men disappeared from the area following the robbery. When Chandler was questioned by police about his presence in Waterloo at the time of the robbery, he initially lied to police until he was confronted with the evidence that his cell phone was used in Waterloo the night of the robbery. Chandler then went on to change his story to confirm he was present in Waterloo at the time of the robbery and that he was looking for employment with Jenkins and Mathews.

While there is no forensic evidence confirming Chandler's participation in the robbery, we conclude the State offered sufficient circumstantial evidence from which the jury could find Chandler participated in the robbery or aided and abetted its commission. *See Huser*, 894 N.W.2d at 491 ("Direct and circumstantial evidence are equally probative. We have stated that a fact finder may infer a defendant's participation from all of the surrounding circumstances of the illegal activity, including evidence of presence, companionship, and conduct before and after the offense is committed." (citation omitted)).

**IV. Sentence.**

Next, Chandler asserts the district court abused its discretion in ordering his sentence to be served consecutively to the sentence he is currently serving in Indiana. He argues the court should have sentenced him to concurrent terms in light of his young age, his young child he could support, his minimal criminal history, his troubled upbringing, his strong work history, and his low to moderate risk to reoffend. He also asserts the court failed to say how consecutive sentences would "facilitate the court's overall sentencing objectives."

In ordering the sentence to be served consecutively to Chandler's Indiana sentence, the district court stated:

> I am going to require that this sentence be served consecutively to any other existing sentence, and I will tell you my reasons for that. First of all, the nature and the circumstances of this offense were violent. There were firearms involved, more than one. The workers at the Burger King, one of them was hurt. They weren't shot, but they were hit with guns. I considered that. You were not a juvenile when this offense was committed; you were an adult. And finally, there is the 2015 conviction in Indiana, and that is also for a serious, violent offense. It's for conspiracy to commit robbery while armed with a deadly weapon.
>
> Based on those circumstances, consecutive terms of imprisonment, even though this case carries a substantial mandatory minimum, consecutive sentences are still appropriate for those reasons.
>
> Your past record, it's true, is not the worst I've ever seen. It doesn't approach being the worst I've ever seen. You do have positive factors in your favor. You have a child who, unfortunately because of your actions, is being supported by the child's mother and cared for exclusively by the child's mother.
>
> I have no doubt that you have the intelligence and the skills to earn money legitimately, and I think you are capable of being a productive member of the community. But you have committed very serious crimes that carry substantial penalties, and they carry those penalties for a reason, because of the harm that does and can result from these offenses.
>
> I do hope that once you are eligible for parole and work release, you examine yourself and you've matured enough to be the person that you're capable of being. I do hope that for you.

The court is required to give reasons on the record for imposing consecutive sentences. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010). ("Although the reasons need not be detailed, at least a cursory explanation must be provided to allow appellate review of the trial court's discretionary action." (citation omitted)). We will find a sentencing court abused its discretion only "when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *Hopkins*, 860 N.W.2d at 553 (citation omitted). The court's

sentencing decision enjoys "a strong presumption in [its] favor." *Id.* (citation omitted). Upon our review of the record, we find no abuse of discretion and conclude the court more than adequately explained its reasons for imposing a consecutive sentence.

**V. Conclusion.**

Because we conclude the evidence of Chandler's participation in the crime either as a principal or as an aider and abettor was sufficient and the court did not abuse its discretion in imposing a consecutive sentence, we affirm.

**AFFIRMED.**