# IN THE COURT OF APPEALS OF IOWA

No. 17-1988
Filed February 6, 2019

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**ANDRE LESURE JOHNSON,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Floyd County, Rustin T. Davenport,

Judge.


　　　　Andre Johnson appeals his conviction for first-degree burglary.

**AFFIRMED.**


　　　　Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

　　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


　　　　Heard by Doyle, P.J., and Mullins and McDonald, JJ.

**McDONALD, Judge.**

Andre Johnson was convicted of burglary in the first degree, in violation of Iowa Code sections 713.1 and 713.3 (2017). The district court sentenced Johnson to an indeterminate term of incarceration not to exceed twenty-five years. In this direct appeal, Johnson asserts several clams of error: (1) his counsel provided constitutionally deficient representation in several respects; (2) the district court erred in denying his motion for new trial; (3) the district court abused its discretion in imposing sentence; and (4) his sentence is unconstitutional.

I.

This case arises out of a residential burglary in Charles City. Johnson and the State have very different accounts of what happened on the night in question.

According to Johnson, he and his girlfriend were visiting some friends in Charles City, including his friend Michael Jackson. While Johnson was with Jackson, they met up with Deangelo Hawkins. The three men wanted to purchase marijuana. Hawkins volunteered he knew a dealer—his childhood friend, Jamison Zirbel. Johnson, Jackson, and Hawkins went to Zirbel's house. In addition to wanting to purchase marijuana, Hawkins believed someone at Zirbel's house had his cell phone. When the three men arrived at Zirbel's house, Hawkins went up to the door while Johnson and Jackson hung back. Eventually they joined Hawkins in the house.

According to Johnson, another man, Garrett Tegtmeier, was present when Johnson entered the home. Hawkins asked about his phone, and Tegtmeier grabbed for his waistband to pull out a gun. Johnson shoved Tegtmeier into a refrigerator, and Jackson locked the entry door and grabbed the gun from

Tegtmeier. Then Johnson and Jackson ran upstairs and went out a window and onto the roof. Jackson was still in possession of the gun, and he dropped it off the roof. While on the roof, Johnson heard a scuffle inside. Johnson and Jackson climbed back into the house. Once inside, Johnson encountered Enrique Bor, a resident of the house. Bor exited the home with Johnson, Hawkins, and Jackson.

As will be discussed in more detail below, Johnson's version of events is not credible. According to the State's evidence, on the day in question, Bor, Zirbel, and Tegtmeier were hanging out at Zirbel and Bor's house. As the evening wound down, Zirbel set out with Tegtmeier to walk Tegtmeier to his home. Zirbel did not lock the entry door because he planned on returning home soon. Bor remained at the house and relaxed in his room upstairs.

Shortly after Zirbel and Tegtmeier left, Bor heard loud knocking at the door. He did not answer. Then he heard people enter the house. Startled, Bor hid in the back of his closet and called Zirbel to see if anyone was supposed to come over. When Zirbel confirmed no one was supposed to come over, Bor called 911. By this time, the intruders were searching around the house. Bor whispered his address to the dispatcher and told the dispatcher there were people in the house. Bor could hear the intruders talking about Bor's PlayStation and other things in Bor's room. While Bor was still on the phone with the dispatcher, someone opened the closet door. Bor hid himself and was not discovered. Bor remained on an open line with the 911 dispatcher.

After receiving Bor's call, Zirbel and Tegtmeier went back to the house. Upon arrival, they found the entry door was deadbolted. The two kicked in the door and ran upstairs. When they reached the second floor, they discovered

4

Hawkins, Johnson, and Jackson. Zirbel was either pushed or fell down the stairs. After falling down the stairs, he sought refuge in the garage. Hawkins, Johnson, and Jackson questioned Tegtmeier while they beat him with a tire iron and searched his pockets. Bor was still in the closet and connected to 911. On the recording of the phone call, multiple voices can be heard in addition to Tegtmeier's voice. On the recording, Tegtmeier can be heard begging his assailants to stop. After beating Tegtmeier, the men threw him down the stairs.

Police quickly responded to the home. When they arrived, Tegtmeier and Zirbel ran to the police. Unsure if the men were the perpetrators or the victims, the police ordered them to lie the ground. Officers then saw Johnson and Jackson exit onto the roof of the house. They ordered Johnson and Jackson to surrender. The men went back inside the home and could be observed going up and down the stairs. They did not come out for several minutes. While still in the house, Johnson opened Bor's closet again. This time Johnson found Bor and instructed him to leave the house with them and tell the officers it was all a misunderstanding and the men were just looking for a phone. Bor did as instructed. However, he tried to stand away from the perpetrators so he could tell the officers the truth. An officer's body camera recorded the events at the scene.

Following the conflict, Tegtmeier was taken to the hospital and received fourteen staples to close open wounds on his head. Police searched the home and found a surveillance system smashed and a PlayStation bagged up. They also observed signs of marijuana dealing. Johnson, Jackson, and Hawkins were charged with first-degree burglary for their involvment. Both Jackson and Hawkins pleaded guilty to second-degree burglary. Johnson chose to proceed to trial.

At trial, Bor, Tegtmeier, and Zirbel testified. The jury heard the 911 call, and the jury observed the body-camera footage. The body camera footage showed Tegtmeier and Zirbel were already outside the home and on the ground when Johnson was on the roof and allegedly heard someone else beating Tegtmeier inside. When Johnson and Jackson testified, the prosecutor impeached them with prior convictions, including convictions older than ten years. The prosecutor also attempted to impeach Johnson with jailhouse phone calls. When Johnson denied making certain statements, the prosecutor requested the recordings be played outside the presence of the jury to refresh Johnson's recollection. As the first recording played, Johnson's counsel objected, noting he had not received a copy of the recording despite an order to produce the same. As a result, the court stopped the recordings and barred the State from making any further reference to the recordings.

The jury returned a verdict of guilty, and the district court imposed the mandatory sentence. Johnson timely filed this appeal.

II.

Johnson asserts several claims of ineffective assistance of counsel. He contends his counsel was ineffective in the following respects: (1) counsel failed to object to the prosecutor's use of prior convictions more than ten years old for impeachment purposes where the prosecutor did not provide notice; (2) counsel failed to object/seek new trial on the ground of prosecutorial misconduct after the prosecutor failed to produce recorded jailhouse phone calls; (3) counsel failed to object/seek new trial on the ground of prosecutorial misconduct after the prosecutor questioned Johnson regarding the phone calls; (4) counsel failed to

move for a mistrial after the prosecutor referenced the jailhouse phone calls; and (5) counsel failed to interpose an objection to an incomplete jury instruction regarding aiding and abetting.

This court reviews claims of ineffective assistance of counsel de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). It is the defendant's burden to show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 688, 687-89 (1984)). Failure to prove either element is fatal to the claim. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal."). Thus, "[i]f we conclude a [defendant] has failed to establish either of these elements, we need not address the remaining element." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

To establish a breach of duty, the defendant is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[C]ounsel's performance is measured against the standard of a reasonably competent practitioner . . . ." *State v. Begey*, 672 N.W.2d 747, 749 (Iowa 2003). There is a strong presumption of counsel's competence. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential . . . .").

Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no

effect on the judgment." *Id.* at 691. Under the second element, the defendant is required to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "It is not enough for the defendant to show that the errors had [only] some . . . effect on the outcome of the proceeding." *See id.* at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On de novo review, we conclude the record is sufficient to resolve these claims on direct appeal. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015) (noting ineffective-assistance claims are generally preserved for postconviction-relief proceedings but may be addressed on direct appeal when the record is sufficiently developed). We elect to bypass the question of whether counsel breached a duty in any of the particulars raised and instead focus on the question of whether the defendant has established constitutional prejudice.

We conclude Johnson failed to establish constitutional prejudice, whether the claims are considered in isolation or cumulatively. *See State v. Clay*, 824 N.W.2d 488, 501-02 (Iowa 2012) (instructing that a court should consider cumulative prejudice only when "the court analyzes the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty"). Here, there was overwhelming evidence of Johnson's guilt. Bor called 911 after Johnson, Jackson, and Hawkins entered the residence. The call was an open-line call. The events can be heard in the background, including Johnson, Jackson, and Hawkins breaking property and then beating Tegtmeier. The police arrived while

the men were still in the residence. When the police arrived, their encounter with Johnson, Jackson, and Hawkins was captured by body-camera. The audio recording of the 911 call and the body-camera footage are contemporaneous documentation of the burglary. Both recordings definitively disprove Johnson's version of events. In particular, Johnson's testimony that he was on the roof while someone else beat Tegtmeier and Zirbel was definitively disproved by the body-camera footage showing Tegtmeier and Zirbel had already exited the home prior to Johnson emerging onto the roof. The audio and video footage was in accord with the testimony of Bor, Tegtmeier, and Zirbel. Tegtmeier was able to specifically identify Johnson as one of his assailants due to Johnson's distinctive hairstyle. All of this was also supported by the physical evidence, including Tegtmeier's injuries.

In light of the overwhelming evidence of Johnson's guilt, there is not a reasonable probability the result of the proceeding would have been different but for the alleged breaches. Johnson has failed to establish his claims of ineffective assistance of counsel. *See State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990) (determining prejudice did not result given overwhelming evidence of guilt); *Whitsel v. State*, 439 N.W.2d 871, 875 (Iowa 1989) ("Regardless of the appellant's many claims as to ineffective assistance of counsel, we find no prejudice to the appellant because the evidence presented at his trial was overwhelming concerning his guilt."); *see also State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case.").

III.

In his next claim of error, Johnson contends the verdict is against the weight of the evidence and the district court incorrectly denied Johnson's motion for new

trial. The denial of a motion for new trial is reviewed for an abuse of discretion. *See State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). When assessing whether the weight of the evidence supports conviction, the district court considers the credibility of the presented evidence, not just the sufficiency of the evidence. *See id.*

The district court applied the correct legal standard in ruling on the motion. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) (setting forth the legal standard). The district court acknowledged its duty to consider the weight of the evidence, both inculpatory and exculpatory, to determine if a miscarriage of justice occurred. It then stated it considered the arguments set forth in the motion for new trial, determined the weight of the evidence supported the verdict, and declined to order a new trial.

Johnson seems to acknowledge the district court applied the correct legal standard in ruling on the motion. He does contend, however, that the district court should have granted the motion because Johnson's version of events is more credible. We disagree. Johnson's version is simply not credible. Regardless, that is not the question presented on appeal. The limited question before this court is whether the district court abused its discretion in denying the motion. *See State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). We conclude it did not.

This claim of error is without mert.

IV.

Johnson asserts two challenges to his sentence. First, Johnson requests that he be resentenced because the district court failed to provide reasons for imposing sentence; failed to reference Iowa Code section 713.3; and failed to

advise Johnson his sentence had no mandatory minimum term of incarceration. Sentencing determinations are reviewed for an abuse of discretion. *See State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010). "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure . . . ." *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998) (citation omitted).

There was no abuse of discretion here. The district court had no discretion to impose any other sentence because the offense was a forcible felony. *See* Iowa Code § 907.3; *cf. State v. Millsap*, 704 N.W.2d 426, 433 (Iowa 2005) (noting the court must only exercise discretion when a sentence is not mandatory). In addition, the district court had no obligation to identify the code provision at issue or advise the defendant of the lack of a minimum sentence. In short, the district court's decision to not recite a reason for imposing a mandatory sentence does not require resentencing. *See State v. Sandstrom*, No.17-1582, 2018 WL 3654858, at *3 (Iowa Ct. App. Aug. 1, 2018) ("Where a court has no discretion in selecting a sentence, failure to state the reasons for a sentence will not result in remand.").

Second, Johnson argues his sentence amounts to cruel and unusual punishment under the federal constitution. A defendant may challenge the legality of his or her sentence at any time. *See State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009). Constitutional challenges are reviewed de novo. *Id.* To establish his sentence is cruel and unusual, Johnson must satisfy a three-part test. First, he must establish his sentence is grossly disproportionate to the underlying offense; this is a threshold test. *See id.* at 873. If that preliminary showing can be made, then the court must engage in an intrajurisdictional analysis followed by an

interjurisdictional review to determine if the sentence is so grossly disproportionate that it amounts to cruel and unusual punishment. *See id.*

Johnson fails to establish a constitutional violation. He argues he received a harsher sentence than Hawkins and Jackson even though they participated in the same burglary. However, Hawkins and Jackson pleaded guilty to different offenses. Johnson does not pass the threshold test of showing his sentence is grossly disproportionate to *his* underlying convicted offense. *See id.* The claim is without merit.

## V.

For the above-stated reasons, we affirm the defendant's conviction and sentence.

**AFFIRMED.**