# IN THE COURT OF APPEALS OF IOWA

No. 24-1932
Filed April 1, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**Asante Ajee Walker-Garcia Adams,**
Defendant–Appellant.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable David P. Odekirk, Judge.

**AFFIRMED**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg (until withdrawal), Vidhya K. Reddy, Assistant Appellate Defenders, attorneys for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, attorneys for appellee.

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

After Asante Walker-Garcia Adams waived his right to a jury trial, the district court found that he committed two counts of second-degree sexual abuse and two counts of first-degree burglary in Black Hawk County. He appeals those four felony convictions, claiming the court should have excluded evidence that he had similar charges in Linn and Johnson Counties. Walker-Garcia Adams also contests his consecutive sentences, which add up to an indeterminate term of 100 years in prison.

Finding no abuse of discretion in the court's evidentiary ruling or its sentencing rationale, we affirm.

## I. Facts and Prior Proceedings

This appeal involves two violent home invasions and sexual assaults that Walker-Garcia Adams committed in the spring of 2023. Because the parties stipulated that the district court could rely on the minutes of testimony in place of live testimony, we take our facts from that document and the court's written verdict.

In March 2024[1] twenty-five-year-old T.D. was living in a Waterloo apartment with her three-year-old son. After an early morning custody exchange with the toddler's father, T.D. forgot to lock her front door before returning to bed. With her child sleeping beside her, T.D. woke up about an hour later to find "a man on top of her." The man threatened her son with a knife and said he would "cut his throat if she yelled for help." The intruder pulled a pillowcase over T.D.'s head, held the knife against her neck, and moved her from the bedroom to the couch. There, he penetrated her vagina

---

[1] These events correspond to Counts I and II of the trial information.

with his fingers and penis. After the intruder left, T.D. couldn't call 911 because he had taken her cell phone. But using her son's tablet, T.D. reached her mother, who called police. In the stairwell of the apartment building, responding officers found a kitchen knife that T.D. identified as belonging to her.[2]

In April 2023,[3] twenty-two-year-old M.K. was a student at the University of Northern Iowa. In the early morning hours, she was asleep in her Cedar Falls apartment when she "was startled awake" by a man on top of her. He gained entrance by cutting through a screen and opening an unlocked living room window. The intruder strangled her and threatened her with a knife. He then penetrated her mouth, vagina, and rectum with his fingers and penis. When he left her apartment, he took her cell phone and tablet. After waiting several minutes, M.K. drove to her parents' house in Waterloo before calling for help. Later at the hospital, M.K. underwent a sexual assault exam.[4]

In the wake of these two attacks—along with a third unsolved home invasion the previous fall in Iowa City—law enforcement from Black Hawk and Johnson counties created a joint task force to investigate. Members of the task force determined "the modus operandi of the suspect in these

---

[2] Swabs taken from the handle of that knife were later determined to be consistent with the DNA profile of Walker-Garcia Adams. In fact, "the chances of another person having that DNA profile would be less than one out of 280 quadrillion," according to criminalists at the Iowa Division of Criminal Investigation (DCI) laboratory.

[3] These events correspond to Counts III and IV of the trial information.

[4] From that exam kit, it was later determined that DNA from the sperm fraction of the vaginal sample was consistent with the DNA profile of Walker-Garcia Adams. In fact, the chances of another person having that DNA profile would be less than one out of 7.4 octillion, according to criminalists at the DCI laboratory.

incidents was to find unlocked residences, enter and use a knife to threaten the female resident . . . [and] sexually assault the female . . . ." As the task force began meeting in May 2023, the Linn County Sheriff's Office joined to discuss a recent assault in Hiawatha. Their investigators were "able to obtain a latent print from the victim's car in that incident" that matched a booking print on file for Walker-Garcia Adams. His identification as a suspect in the Linn County case allowed the authorities to obtain a search warrant and interview with the suspect.

In June 2023, the State filed a four-count trial information, charging Walker-Garcia Adams with first-degree burglary in violation of Iowa Code section 713.3 (2023) and second-degree sexual abuse in violation of Iowa Code section 709.3 for offenses against T.D.; and another count of each for offenses against M.K. All four crimes charged were class "B" felonies.

Before trial in Black Hawk County, Walker-Garcia Adams moved to exclude any reference to the task force cases from other counties. After a hearing, the court "preliminarily denied" his motion in limine. It "reserve[d] ruling on the alleged prior bad acts, including, without limitation, any prior allegations concerning the pending charges in Johnson County and Linn County."

Walker-Garcia Adams waived his right to a jury trial and agreed that his case could be tried on the minutes of testimony. After reviewing that record, the court found Walker-Garcia Adams guilty as charged. It then imposed four consecutive sentences for one term not to exceed 100 years with a mandatory minimum term of thirty-five years.

Walker-Garcia Adams appeals his convictions and sentence.

## II.    Analysis

Walker-Garcia Adams contests the district court's denial of his motion in limine and objects to evidence of other bad acts under Iowa Rule of Evidence 5.404(b). He also challenges its sentencing decision. We will consider each claim in turn.

### A. Other Bad Acts Evidence

#### 1.    Scope and Standard of Review

We review the challenged evidentiary ruling for an abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). We will find abuse if the district court rests its ruling on clearly untenable grounds or bases its decision on a faulty application of the law. *Id.*

#### 2.    Preservation of Error

Before reaching the merits, we consider the State's error preservation challenge. The State contends that Walker-Garcia Adams cannot object to the evidence from Linn and Johnson counties because he consented to the district court's reliance on the minutes of evidence, which included that information in its discussion of the joint task force.

In reply, Walker-Garcia Adams points to a discussion near the start of the bench trial where defense counsel agreed to the district court relying on the minutes but asked the court to revisit its preliminary ruling on his motion in limine. Counsel clarified: "With the admission of those exhibits, we'd ask the court to enter a finding that the ruling is now a final ruling." The judge responded: "The court will so find at this time." Walker-Garcia Adams contends that this exchange was "plainly done with the purpose of preserving error on the matter." *See id.* at 621 (noting a final ruling on motions in limine

need not be questioned during the trial). We agree that the district court understood that Walker-Garcia Adams was not consenting to its consideration of the other bad acts evidence. Error was preserved.

### 3. Merits

In contesting the court's denial of his motion in limine, Walker-Garcia Adams focuses on Iowa Rules of Evidence 5.404(b). Rule 5.404(b)(1) prohibits a party from using evidence of "any other crime, wrong, or act" to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

We ask three questions when considering the admissibility of other bad acts evidence. *State v. Putman*, 848 N.W.2d 1, 8–9 (Iowa 2014). First, was the evidence relevant to a legitimate issue in dispute? *Id.* at 9. Second, was there "clear proof" that the party committed the other acts? *Id.* (citation omitted). Third, is the probative value of the evidence substantially outweighed by the danger of unfair prejudice? *Id.*

The State's theory of admissibility for the incidents from Johnson and Linn counties was their relevance to Walker-Garcia Adams's identity as the perpetrator of the Black Hawk County offenses, to his common scheme, and to his modus operandi. As the prosecutor explained at the motion-in-limine hearing, "the reason that we can identify the defendant is because of this physical evidence that we found in Linn County. But for that incident where the defendant left a fingerprint, we probably still would be looking for a suspect."

6

As for the Johnson County offense, the prosecutor asserted:

> Well, the facts and circumstances of that case were so acutely similar to the Black Hawk County case[s] that they couldn't be separated. I mean, the victims in all three had the exact same things happen to them. So just like our two here that the court has already looked at, they are inextricably linked. They are a part of the same common scheme, the same modus operandi.

On appeal, Walker-Garcia Adams doesn't seriously contest whether the other acts were relevant or that clear proof existed. Rather, he jumps to the third question, contending "the evidence of the acts in the other counties was extremely prejudicial." He also questions the State's need for the evidence, urging, "It was strictly presented to paint the defendant as a monster rather than prove the facts of the cases in Black Hawk County."

In contrast, the State insists the potential for prejudice was low. We agree with the State's assessment on prejudice. As the State explained, it "did not offer the evidence to show Walker-Garcia Adams was a bad person, it was offered to explain how the police investigation led to him as a suspect and how the identity of the perpetrator was confirmed through the similarities in the crimes and the evidence obtained from them."

And critically, the prejudicial effect was minimized in the context of this bench trial. *See State v. Wilde*, 987 N.W.2d 486, 498 (Iowa Ct. App. 2022). The court's reasoning was plain from its written verdict. And it did not dwell on the other acts evidence to find Walker-Garcia Adams guilty of the Black Hawk County crimes. In fact, the court made clear that he was "not on trial for those acts." We find no abuse of discretion in the court's ruling on the motion in limine.

## B. Sentencing Challenge

### 1. Scope and Standard of Review

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits," as was the case here, "is cloaked with a strong presumption in its favor." *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020) (citation omitted). We reverse only when the court abuses its discretion or we find a defect in the sentencing procedure. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

### 2. Merits

Walker-Garcia Adams contends that in imposing four consecutive terms, the sentencing court ignored two mitigating factors: his lack of prior felony convictions and his job history before his arrest. But the record does not support his contention.

The presentence investigation (PSI) report revealed that he had only misdemeanor convictions for possession of hashish and driving offenses. The report also listed his employment history. But given the serious nature of his current offenses, the PSI recommended an indeterminate term of fifty years (concurrent terms on Counts I and II, concurrent terms on Counts III and IV, and those sentences served consecutively). The report stated: "Consecutive prison terms are justified for his repeated vicious criminal acts."

At sentencing, the State asked the district court to impose consecutive twenty-five-year terms for Walker-Garcia Adams's four class "B" felony convictions. In the prosecutor's estimation: "He deserves every bit of 100 years." The prosecutor stressed the devastating impact on the victims and the "absolute danger" that Walker-Garcia Adams posed to the community.

No surprise, Walker-Garcia Adams urged the court to impose concurrent terms. As mitigating factors, defense counsel offered that his client had "virtually no criminal history" and "maintained consistent and reliable employment." In his allocution, Walker-Garcia Adams said: "I regret a lot of things and I apologize to a lot of people."

Both T.D. and M.K. gave victim impact statements, expressing their deep fear of Walker-Garcia Adams. M.K. told the court that she was diagnosed with complex post-traumatic stress after the incident, leaving her with nightmares and panic attacks. The crime also impacted her financially: "The stress and trauma often causes me to miss work or need more time off."

In pronouncing the sentence, the court referenced both Walker-Garcia Adams's allocution and the victim impact statements. It also took into account the PSI report and its recommendations.[5]

The court imposed consecutive sentences, explaining:

> The burglary involves the invasion of the security and safety of the victim's home, whereas the sexual abuse charges involve the violation of the victims' persons. Further, concerning Counts I and II, the victim's three-year-old son was present during that offense and his safety was directly threatened by the defendant.

The court noted the planning behind the home invasions and the fact that Walker-Garcia Adams "executed them in a manner that was not only violent but was intended to instill maximum fear and terror in his victims."

---

[5] As the court noted, it was not considering the unproven conduct from Linn and Johnson counties.

The court also pointed to the danger posed to different communities to justify the consecutive sentences:

> [T]hese offenses were committed in different cities, and each of these communities has an interest in the safety and security of their citizens in their persons, homes, and neighborhoods. This expectation of safety and security were violated by the defendant and his terrorism of those communities.

The district court gave "sufficient and thoughtful consideration" to selecting the proper sentence to address both the serious nature of these offenses and the characteristics of the offender. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010). We find no abuse of discretion. *See State v. Peterson*, 998 N.W.2d 876, 882 (Iowa Ct. App. 2023) (recognizing that discretion encompasses a range of reasonable choices).

**AFFIRMED.**